LIZZIE E. COOKSON *vs.* H. G. BARKER COMPANY.

Androscoggin.    Opinion November 23, 1921.

*The inconsistencies in the testimony of a plaintiff and his witnesses, and in the*
*acts of plaintiff prior to the date of the alleged accrued cause of action, which*
*produce a conviction that the jury must have been actuated by sympathy,*
*bias or prejudice, warrants the granting of a new trial.*

Action on the case to recover damages for personal injuries claimed to have been received by the plaintiff because of the falling of snow and ice from the defendant's building. The jury returned a verdict for the plaintiff, and the defendant filed a general motion for a new trial.

The testimony shows that the plaintiff had suffered from neurasthenia for several years before the date claimed in her writ as the commencement of her suffering. It appears, too, that she had previously brought suit in another county against another defendant for the same claim, reference to which is unnecessary further than to say that the inconsistencies appearing in the instant case are accentuated by the recital of the testimony in the former case, and leave no ground for hesitation in holding that the jury must have been actuated by sympathy, bias or prejudice, and that the verdict is manifestly wrong.

On motion for new trial by defendant. An action on the case to recover damages for personal injuries alleged by plaintiff to have been suffered by her by reason of snow and ice falling from the roof of a building owned by defendant and striking her on the head. The jury

returned a verdict of $1,098 for plaintiff, and defendant filed a general motion for a new trial.   Motion sustained.   New trial granted.

Case is fully stated in the opinion.

*Frank A. Morey*, for plaintiff.

*Pattangall & Locke, and Charles A. McGraw*, for defendant.

SITTING:   CORNISH, C. J., SPEAR, HANSON, DUNN, DEASY, JJ.

HANSON, J.   Action on the case to recover damages for personal injuries claimed to have been received by the plaintiff because of the falling of snow and ice from the defendant's building.   The jury returned a verdict for the plaintiff, and the defendant filed a general motion for a new trial.

The plaintiff in her declaration alleges, that "on the eighth day of February, 1918, she was walking along on the sidewalk on Water Street, in the City of Gardiner; that the defendant owned a building on Main Street in the City of Gardiner on that day, and on the roof of said building was an accumulation of snow and ice which made it unsafe for passers upon the sidewalk, in that snow and ice were likely to become loose, and to fall upon persons so walking along, and the plaintiff further says that the defendant carelessly and negligently allowed said snow and ice to accumulate upon the roof of said building on the said Street aforesaid, on the day aforesaid, and she further says that on said day, and at such time, she was walking along the sidewalk in a proper and prudent manner, when suddenly and without any warning the snow and ice fell from the roof of the building of the said defendant, so carelessly and negligently allowed by him to there remain, and struck her upon the head and seriously injured her, and the plaintiff further says that for a period of three days and nights after the injury she was 'out of her head and unconscious much of the time,' and that she was confined to the house for two months before being able to go out, and that she was so severely injured that she has not yet recovered from the effects thereof and probably never will, and the plaintiff further alleges that this injury happened to her solely through the negligence and want of care of the defendant, and through no negligence or want of care upon her part."

It is not disputed that the plaintiff was in front of the defendant's premises on the day set out in the writ, or that snow fell from the

defendant's building striking the plaintiff. The plaintiff and her daughter-in-law testify that snow and ice fell, striking the plaintiff and injuring her, and the vital question in the case aside from the injury, if any resulted, was whether any ice fell from the building at the time complained of. As to this question it is sufficient to say that from the plaintiff's own witnesses it clearly appears that the plaintiff was not struck by ice as alleged in the writ. It further appears from her witnesses, as well as from defendant's, that a small amount of snow, varying in quantity from a half dustpan to a shovelful did fall from the defendant's building, striking plaintiff's head, and the testimony is overwhelming that she "just smiled and brushed it off."

Her principal physician, whose advice plaintiff says she sought first, testified that he treated her for traumatic neurasthenia as the result of injury to her head, but his diagnosis and treatment and testimony were based upon a history of the patient inconsistent with the facts in the case. A recital of his evidence in this connection follows:

"Q. Was there anything in the condition of Mrs. Cookson's head that observation would show that she had had any blow on the head, any bruises?

A. No; there was no contusions or bruises; no objective signs.

Q. No way you could tell, except by her speaking of it?

A. Her story.

Q. After a thorough examination of the case and treatment of it you diagnosed it as traumatic neurasthenia. Could such a condition come about from a light fall of snow, perhaps a shovel full, striking a woman's head, who had on a hard hat, from the second story of a building?

A. Depends on how far it fell! if it had fallen far enough to crush her hat——

Q. From the second story of a building.

A. It would depend entirely on the amount of course. Will you please repeat the question?

Q. A fall of light snow, not exceeding a shovel full, coming from the eaves of a two story building, striking on a woman's head who had on a hard hat, could that produce traumatic neurasthenia?

A. No; if that were true I should think it could not.

Q.  To produce that condition would it require a somewhat severe blow?

A.  Rather severe.  Of course the fright attending it would also affect her as well as the actual force of the blow.

Q.  You wouldn't expect any fright in the case of an adult person to attend a condition where a shovel full of snow fell on him from the eaves of a building?

A.  No, sir.

Q.  And in order to make that diagnosis you are obliged to assume a somewhat severe blow from something besides a light flurry of snow?

A.  Yes, sir.

Q.  And as the case was related to you you understood that a substantial quantity of ice fell, didn't you?

A.  Ice and snow.

Q.  What?

A.  Ice and snow.

Q.  But the ice was the important factor, wasn't it?

'A.  Likely to be; yes.

Q.  What?

A.  Yes, sir."

The testimony shows that the plaintiff had suffered from neurasthenia for several years before the date claimed in her writ as the commencement of her suffering.  It appears, too, that she had previously brought suit in another county against another defendant for the same claim, reference to which is unnecessary further than to say that the inconsistencies appearing in the instant case are accentuated by the recital of the testimony in the former case, and leave no ground for hesitation in holding that the jury must have been actuated by sympathy, bias or prejudice, and that the verdict is manifestly wrong.

*Motion sustained.*
*New trial granted.*